MR. JUSTICE McDONOUGH
delivered the Opinion of the Court.
This is an appeal from a Workers’ Compensation Court judgment entered on July 16, 1987, denying claimant Delbert Snyder’s petition for permanent disability benefits. We affirm.
Mr. Snyder presents the following issues for review:
(1) Did the Workers’ Compensation Court err by failing to find that Mr. Snyder had reached maximum healing and that the work injury had totally and permanently disabled Mr. Snyder, and what effect, if any, should Mr. Snyder’s car accident following the work injury have on his entitlement to benefits?
(2) Did the lower court err in requiring Mr. Snyder to prove that his disability was caused by his work injury rather than his preexisting condition and the car accident?
Mr. Snyder injured his back operating a mechanical shovel for the Anaconda Company on January 6, 1982. Following the injury Mr. Snyder petitioned for benefits. The Anaconda Company (Anaconda) denied liability contending that the injury was not work related. Mr. Snyder petitioned for a hearing before the Workers’ Compensation Court, and on October 11, 1985, the court held that Mr. Snyder’s injury entitled him to medical and temporary total disability benefits from the date of the injury to December 28, 1982. The lower court refused to “speculate whether any additional temporary total disability benefits may be due beyond that date” because Mr. Snyder reinjured his back in a car wreck on December 28, 1982. The lower court reasoned that “[t]he claimant still has the burden of proving his case and it simply has not been proven that his problems after the auto accident are in any way related to his employment.”
Following this judgment Mr. Snyder petitioned for permanent disability benefits. Again the Workers’ Compensation Court held that *200 Mr. Snyder had failed to prove his case. According to the lower court,
“Claimant is, in a sense, a victim because we do believe he is suffering, but given the lengthy pre-injury medical care and subsequent car accident in December, 1982, he has not been able to establish any entitlement to additional compensation benefits beyond December, 1982.”
As noted by the lower court, the crux of the issue here is whether Mr. Snyder’s disability resulted from the work injury, or from the 1982 car accident and his preexisting back problems. The medical evidence used to resolve this issue consisted of two depositions from James B. Mossman, Mr. Snyder’s chiropractor, and a deposition from Charles E. Buehler, an orthopedic surgeon who examined Mr. Snyder at the request of Anaconda’s claim’s adjustment firm. The lower court also heard Mr. Snyder’s testimony at the hearing held pursuant to his petition.
Dr. Mossman testified that prior to the work injury he treated Mr. Snyder for “myositis” and associated muscle inflammation from the neck to the lower back. After the work injury Dr. Mossman stated that Mr. Snyder complained of new pain in the lower back. The new pain, according to Dr. Mossman, was probably caused by an awkward sitting position Mr. Snyder was forced to assume while pushing foot pedals on the shovel he operated for Anaconda. The position and the machine’s vibration would “tend to cause micro-traumatic strain and sprain problems.”
Dr. Mossman also treated Mr. Snyder after he reinjured the back in the December 28, 1982 car accident. Just prior to the car accident, according to Dr. Mossman, Mr. Snyder’s condition was improved but continuing and chronic. Dr. Mossman stated that the car accident aggravated the work injury and caused problems in Mr. Snyder’s neck. However, by March of 1984, according to Dr. Moss-man, Mr. Snyder’s back had returned to its pre-accident condition.
Dr. Mossman characterized the condition of Mr. Snyder’s back in March of 1984 as stable and referred to it as a disabling “underlying chronic lumbar problem.” Dr. Mossman also deposed that jarring and jostling of the spine at work probably caused the lumbar condition. However, Mr. Snyder’s preexisting osteoarthritis of the spine also contributed to his disability, according to Dr. Mossman. Dr. Mossman also deposed that Mr. Snyder’s osteoarthritis could have been aggravated and accelerated by Mr. Snyder’s job duties.
Dr. Buehler testified that when he examined Mr. Snyder in May of *201 1982, Mr. Snyder was suffering from osteoarthritis of the lumbar spine. The osteoarthritis, according to Dr. Buehler, would predispose Mr. Snyder to repeated injuries if Mr. Snyder continued to perform the sort of duties he performed for Anaconda. However, on the date of his examination, according to Dr. Buehler, there was no evidence that work related trauma to the back was causing Mr. Snyder’s problems. The problem at that time, according to Dr. Buehler, was the result of osteoarthritis which was severe for a man Mr. Snyder’s age, and which predated the injury. The relationship between the arthritis and the work injury was explained in Dr. Buehler’s deposition as follows:
“Q. Okay. When you examined him in May of 1982 and made your diagnosis of diffuse arthritis, did you in any way conclude that the condition which you diagnosed in May of 1982 was caused by the incident he referred to while pushing on the pedals of the machine?
“A. No. I do not think that the arthritis in his back was caused while pushing on the pedals on the machine in January of 1982.1 do think that maneuvers such as he described, pushing on the pedals, could have exacerbated a preexisting back condition.
“Q. Okay. Now, when you say ‘could have exacerbated,’ are you referring to a temporary type of exacerbation?
“A. Probably a temporary type of exacerbation, yes.
“Q. Explain that if you would.
“A. I think this man has marked changes in his back, radiographically, with osteoarthritis that’s going to predispose him to injuries to his back. His back is wearing out. There are going to be things that will irritate it. Usually the history of this problem is that these things will irritate it.
“He may develop some muscle spasm, some pain in his back for a period of time. Usually that will get better with proper care in taking care of it. But, again, he’s going to have, then, repeated incidents. I think that’s going to be the history of this man’s back.”
Dr. Buehler did not testify as to whether or not work duties which demanded jarring and jostling of the spine could have aggravated and accelerated the osteoarthritis. Both of the medical experts deposed in this case agree that Mr. Snyder’s condition prevents him from returning to the job he performed at the time of the work injury.
Mr. Snyder testified that for three months after the work injury, extreme pain prevented him from being able to stand for any appreciable amount of time. Mr. Snyder also testified that four or five *202 months after the work injury it “leveled off” and improved. According to Mr. Snyder, as long as he was “more or loss inactive”, the injury was not a constant bother.
Mr. Snyder also stated that following the 1982 car accident the aggravated back problem once again restricted him. However, Mr. Snyder testified that the aggravation caused by the car accident was less severe than the back problem he suffered from immediately after the work injury. Mr. Snyder also testified that around three months after the car accident his back improved and stabilized once again. Mr. Snyder equated his back problems at that time to the condition he suffered from just prior to the 1982 car accident.
ISSUE 1
Did the Workers’ Compensation Court err by failing to find that Mr. Snyder had reached maximum healing and that the work injury had totally and permanently disabled Mr. Snyder, and what effect, if any, should Mr. Snyder’s car accident following the work injury have on his entitlement to benefits?
Mr. Snyder contends that the lower court improperly failed to find that his employment caused his disability. We disagree and affirm the lower court’s decision to deny a permanent disability because substantial evidence supports the lower court’s decision.
The claimant bears the burden of showing an entitlement to benefits under the Workers’ Compensation Act. Metzger v. Chemetron Corp. (Mont. 1984), [212 Mont. 351,] 687 P.2d 1033, 1035, 41 St.Rep. 1788, 1790. And in reviewing the lower court’s findings, we will not overturn a Workers’ Compensation Court decision supported by substantial evidence. Metzger, 687 P.2d at 1035.
To receive an entitlement to permanent disability benefits, Mr. Snyder must show by a preponderance of the probative credible evidence that an injury caused his disability. Ferdinand v. Lodge #456, B.P.O.E., Lewistown (Mont. 1986), [221 Mont. 435,] 719 P.2d 775, 777, 43 St.Rep. 955, 956-57. Findings based on substantial though conflicting evidence will not be disturbed on appeal. Ferdinand, 719 P.2d at 777.
In this case, the medical evidence is conflicting as to whether or not a work related injury caused or contributed to Mr. Snyder’s disability. In this regard, Dr. Mossman deposed that a series of micro-traumas occurring to Mr. Snyder’s back culminated in the injury which caused his current disability. However, Dr. Buehler de *203 posed that no sign of the injury was present at the time of his examination, and that osteoarthritis caused Mr. Snyder’s disability. Dr. Buehler’s deposition provides substantial though conflicting evidence that the work injury was not a factor in causing Mr. Snyder’s disability. Thus, the lower court’s findings are adequately supported in the record, and we affirm on this issue.
ISSUE 2
Did the lower court err in requiring Mr. Snyder to prove that his disability was caused by the work injury rather than the auto accident and his preexisting condition?
As stated previously, permanent disabilities under the 1981 Workers’ Compensation Act are compensable where they result from what the Act defines as an “injury”. See Sections 39-71-116(12), 39-71-116(13), MCA (1981), and see Schieno v. City of Billings (Mont. 1984), 683 P.2d 953, 955, 41 St.Rep. 1157, 1159. In this case, part of Mr. Snyder’s burden was a showing that the work injury rather than other causes resulted in his disability. Schieno, 683 P.2d at 955.
Mr. Snyder contends that the evidence irrefutably shows that the work injury at least contributed to his disability. However, Dr. Buehler’s deposition provides substantial evidence that the injury was completely healed prior to the car accident. The lower court found on the basis of this evidence that the work injury did not contribute to the disability. Thus, we affirm.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, WEBER and GULBRANDSON concur.